UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GARY E. AFFONSO,

    Plaintiff,

    v.

METROPOLITAN LIFE INSURANCE COMPANY, et al.,

    Defendants.
_____/

No. C 10-5054 PJH

**ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT**

    The parties' cross-motions for summary judgment came on for hearing before the court on February 1, 2012. Plaintiff Gary E. Affonso ("plaintiff") appeared through his counsel, Laurence Padway, Walter Crump, and Robert Weaver. Defendant Metropolitan Life Insurance Company ("MetLife") appeared through its counsel, Rebecca Hull. Defendant Morgan Stanley & Co., Inc. ("Morgan Stanley")[1] appeared through its counsel, Mark Boennighausen. Having read all the papers submitted and carefully considered the relevant legal authority, the court hereby rules as follows.

## BACKGROUND

    Plaintiff Gary Affonso is the husband of decedent Nance Affonso. See First Amended Complaint ("FAC") ¶ 3. Ms. Affonso was employed by defendant Morgan Stanley during the relevant time period. Id. ¶ 5. Morgan Stanley is the plan sponsor of the Morgan Stanley Benefits Plan (the "Plan"). Id. ¶ 5. See also Braun Decl. ¶ 4. Defendant MetLife is the insurance carrier for the Plan, and determines eligibility for benefits payable under the Plan. See Administrative Record ("AR") 75.

---

[1]     Morgan Stanley appears to have been incorrectly referred to as Morgan Stanley Smith Barney LLC in the first amended complaint.

A.     Background Allegations/Facts

Plaintiff alleges that in or about November 2009, Morgan Stanley advised Ms. Affonso to enroll for plan benefits on the Morgan Stanley benefits website. FAC ¶ 7. The Summary Plan Description for the Basic and Supplemental Life Insurance Plan: 501, in turn, directed Ms. Affonso to contact a "Benefit Center Representative" to determine the exact amount of her Benefits Eligible Earnings, which is used to establish the amount of life insurance benefits to which she is entitled under the Plan. Id. Plaintiff alleges that during the application process, a Benefit Center Representative advised Ms. Affonso that she was eligible for $1,000,000 of life insurance. Id. Accordingly, Ms. Affonso enrolled in the Plan and requested certain benefits, including $1,000,000 in Supplemental Life Insurance coverage. Id.

In January 2010, plaintiff alleges that a required premium of $69.50 was deducted from Ms. Affonso's bi-monthly paycheck as payment for the $1,000,000 in Supplemental Life Insurance coverage. Id. ¶ 10. Plaintiff and Ms. Affonso called the benefits department in order to verify that the premium had been deducted for the $1,000,000 policy, and were allegedly told by a benefits department representative that a $1,000,000 Supplemental Life Insurance coverage amount had been accepted; that this coverage amount was recorded in the system and in force; and that a written confirmation of coverage would be sent to them. Id.

Plaintiff alleges that a confirmation of benefits coverage dated February 3, 2010, in the amount of $1,000,000 of Supplemental Life Insurance coverage was sent to Ms. Affonso, and received shortly thereafter by plaintiff. Id.

On February 1, 2010, Ms. Affonso passed away. Plaintiff thereafter filed a claim for death benefit coverage under the policy, and received a letter dated March 31, 2010 from MetLife stating that his claim was approved in the amount of $550,000, including $50,000 in basic coverage, with no explanation as to why the coverage amount was not $1,000,000. Id. ¶ 15. Plaintiff contacted a MetLife claims examiner and was told that a letter of

explanation would be sent to plaintiff. Id. ¶ 17. By letter dated April 9, 2010, MetLife denied plaintiff the portion of his claim in excess of the approved amount of $550,000. Id. ¶ 19. MetLife denied the additional $500,000 benefit on the ground that the maximum amount of Supplemental Life Insurance coverage available to Ms. Affonso was limited to ten times her eligible earnings of $53,017.73, or $500,000. AR 209.

On May 21, 2010, plaintiff submitted an appeal as he was advised in the April 9, 2010 letter. Id. ¶ 20. Plaintiff submitted proof that the premiums had been deducted from Ms. Affonso's bi-weekly paychecks prior to her death, and a copy of the written confirmation of the $1,000,000 policy. Id. On June 22, 2010, Met Life denied plaintiff's appeal, advising plaintiff that he had the right to bring a civil action under Section 502(a) of ERISA. Id. ¶ 21.

B.   Procedural History

On November 8, 2010, plaintiff filed the instant action against MetLife, Morgan Stanley, and the Morgan Stanley Benefits Plan, alleging violation of ERISA. Plaintiff alleges that MetLife has unreasonably withheld payment of his benefits in full. Id. ¶ 22. By stipulation of the parties, plaintiff filed an amended complaint which alleges the following claims for relief: (1) a claim against all defendants for improper denial of benefits under a welfare benefit plan covered by ERISA; (2) a claim against MetLife for interest on the unpaid amounts pursuant to Cal. Insurance Code § 10172.5; and (3) a claim against Morgan Stanley for breach of contract. See Doc. no. 32.

Defendants Morgan Stanley Benefits Plan and MetLife filed an answer to the FAC on April 26, 2011.

On July 6, 2011, the court ruled on defendant Met Life's motion for abuse of discretion review, as well as plaintiff's motion to augment the administrative record, and defendant Morgan Stanley's motion to dismiss. See July 6, 2011 Order.

The court granted defendant MetLife's motion for abuse of discretion review, holding that the Summary Plan Description ("SPD"), which had been submitted as Ex. 1 to the

Declaration of Leigh Braun in support of the motion for review, constitutes the formal plan document for the Plan at issue, and noting that the language of the SPD clearly granted discretionary authority to the Plan Administrator and Plan fiduciaries.  The court also granted in part plaintiff's motion to augment the administrative record in the case, since the SPD itself referenced "certain other documents" that made up the official Plan documents.  The court ordered defendants to produce those "other documents" as well as the insurance contract for the life insurance plan.  Finally, the court granted Morgan Stanley's motion to dismiss the breach of contract claim against it, as the claim was preempted by ERISA.  See generally July 6, 2011 Order.

Subsequent to the court's order, plaintiff moved for clarification of the court's July 6 order and for leave to file a motion for reconsideration of the order to the extent the court had found abuse of discretion review appropriate.  In granting the request for clarification on September 8, 2011, the court held that defendants – who had failed to identify and produce certain requested documents in an additional declaration following the court's July 6 order – were ordered to produce a supplemental declaration that addressed the existence of documents referenced in the SPD that constituted or made up the Morgan Stanley Life Insurance Plan and Basic/Supplemental Life Insurance Plan.  See Sept. 8, 2011 Order.

The court also granted plaintiff leave to seek reconsideration of the court's order allowing abuse of discretion review.  The court noted that, in light of the insurance contract newly produced by defendant in response to the July 6 Order, and the fact that the newly produced contract did not delegate discretion to MetLife, Ninth Circuit precedent required that defendant demonstrate that the insurance contract had been amended to confer discretion on the Plan Administrator, in order to confirm abuse of discretion review based upon the SPD.

The court then duly considered a motion for reconsideration filed by plaintiff, and granted the motion on October 13, 2011.  The court reiterated in its order that the SPD was the plan document, and further held that, because the insurance policy does not grant

discretion to the Plan Administrator (even though the SPD does), the applicable standard of review is de novo review. See Oct. 13, 2011 Order. Thus, the appropriate standard of review to be applied in this action is de novo review.

Now before the court are the parties' cross-motions for summary judgment.

**DISCUSSION**

A.  Legal Standard

Summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the case.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Where an ERISA action claiming wrongful denial of benefits is reviewed under a de novo standard on summary judgment, the court must determine whether benefits were correctly denied based on the evidence in the administrative record. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 963 (9th Cir. 2006)(en banc).  The court must grant summary judgment if the administrative record reveals no genuine issue of material fact.

A.  Legal Analysis

As the court has already determined that de novo review applies, resolution of the parties' motions is straightforward.  It requires the court to review plaintiff's claim for denial of benefits and to ascertain, based on the administrative record, whether Met Life correctly concluded that plaintiff was only entitled to half of the $1 million worth of supplemental life insurance benefits for which the decedent purportedly contracted. See, e.g., Firestone Tire & Rubber, 489 U.S. at 115.

Preliminarily, there are two matters that require the court's attention.  First, the court must determine the scope of permissible evidence that may be considered.  As a general rule, the court confines its review to the administrative record on de novo review.  Here,

5

however, although defendants lodged an administrative record designated as ADMIN 1 through ADMIN 244, the parties have additionally cited various other documents. These additional documents appear to include: the operative summary plan description ("SPD") that the court held constitutes the relevant Plan document in this case, and which is located at Morgan Stanley ("MS") 000044 through MS000184; and the underlying insurance policy between MetLife and Morgan Stanley, located at MET 01 through MET 175. These additional designations appear to have occurred as a result of the court's prior orders instructing defendants to provide additional Plan documents related to the underlying insurance policy at issue. Thus, the relevant universe of documents that the court may consider as part of the administrative record includes these additional documents.[2]

Second, and to the extent defendant Morgan Stanley has moved for summary judgment on grounds that it is an inappropriate party to this action, Morgan Stanley's argument is well taken. As it points out, the Plan lists MetLife as the Claims Administrator; states that MetLife determines supplemental life insurance benefits payable under the Plan; states that supplemental life insurance benefits under the Plan are funded through a policy issued by MetLife; states that a request for payment of benefits is made through the processing of a claim with MetLife; and states that any decisions regarding type or amounts of benefits payable under the Plan are made by MetLife, who is designated as Claim Reviewer and Appeal Reviewer, and whose decisions are final, conclusive, and binding. See MS000045, MS000119, MS000158, MS000162, MS000165, MS000173-74. While Morgan Stanley is referenced as a Plan Sponsor, it has not been vested with the authority to determine supplemental life insurance benefits, or the type or amounts of such benefits that are payable. See MS000172. Although plaintiff does contend that Morgan Stanley is the Plan Administrator, this is demonstrably untrue: the Plan document lists "Morgan

---

[2] To the extent that plaintiff has additionally submitted his own supporting declaration and those of Nacole Carson in further support of his motion, the court declines to consider this additional extraneous evidence, which was not in MetLife's possession at the time it made the underlying benefit determination.

6

Stanley Global Head of Human Resources" as Plan Administrator – not defendant Morgan Stanley.  Id.

Thus, because Morgan Stanley is not the Plan Administrator, and because it was not delegated any role in determining or issuing claims for benefits payable under the supplemental life insurance policy issued by MetLife, Morgan Stanley can have had no role in denying, or responsibility for paying out, plaintiff's request for benefits.  Nor has plaintiff otherwise come forward with any evidence demonstrating any actions taken by Morgan Stanley suggesting that it had any responsibility for paying plaintiff's claim, or undertook any wrongful conduct in determining payment of the claim.  Indeed, plaintiff's opposition appears to concede Morgan Stanley's argument, as it omits any substantive counterpoint to defendant's motion.  Accordingly, and insofar as Morgan Stanley seeks summary judgment on grounds that it is not a proper defendant in this action, defendant is correct, and its motion for summary judgment is therefore GRANTED.

The court now turns to the heart of plaintiff's and MetLife's cross-motions: whether MetLife appropriately determined that plaintiff was entitled to only $500,000 in coverage benefits.  This inquiry begins, as it must, with the language and provisions of the Plan itself. The SPD – the operative Plan document – provides: that employees may "elect to purchase one of several levels of coverage listed on [] enrollment materials or on the Benefit Center website, subject to a maximum of the lesser of ten times your Benefits Eligible Earnings, as defined in the Benefits Eligible Earnings section, or $5,000,000;" and that Benefits Eligible Earnings are used to determine "the amount of supplemental life insurance available."  See MS000119, MS 000067.  The Plan also provides the formula pursuant to which Benefits Eligible Earnings are calculated.  See MS 000067. Furthermore, the Plan acknowledges that certain benefits – like the supplemental life insurance benefits at issue here – are insured through insurance contracts, and those benefits are payable under the Plan "only to the extent payable under the Insurance contracts."  MS000045.  The Plan thus expressly provides that any supplemental life

insurance coverage issued under the Plan is subject to a maximum amount that is established based on the amount of Benefits Eligible Earnings that an employee has. In short, no employee may obtain more than the lesser of ten times their Benefits Eligible Earnings, or $5 million.

The 2010 Benefits Enrollment Highlights confirms this understanding. This document states that an employee "may purchase Supplemental Life insurance coverage, in varying incremental amounts... up to 10 times [the employee's] Benefits Eligible Earnings, subject to a maximum coverage amount of $5,000,000." MS000021.

As applied here, the Plan clearly contemplated that decedent was eligible for supplemental life insurance benefits, up to an increment reflecting ten times the amount of her Benefits Eligible Earnings. And since the record also demonstrates that decedent's Benefits Eligible Earnings were determined to be $53,017.13, and that MetLife used this figure in determining her benefits to satisfy the incremental supplemental coverage amount of $500,000, MetLife appears to have accurately calculated the decedent's benefit amounts. See ADMIN189-190.

Plaintiff challenges this calculation on grounds that the Affonsos never received any written explanation of their benefit plan; that they were able to elect $1 million in supplemental coverage online through the Morgan Stanley Benefits Center; and that they were repeatedly informed by a Benefits Center representative, after having made this election, that the decedent was in fact covered for $1 million. See ADMIN 213-16. In further support of his contention, plaintiff relies on a confirmation of benefits that was sent to him and which purportedly confirms the decedent's supplemental coverage in the amount of $1 million. See ADMIN 218-19. Based on these facts, plaintiff argues that MetLife is estopped from relying on any calculation of benefits to deny plaintiff the full value of decedent's $1 million in supplemental life insurance coverage, or alternatively, that MetLife has waived any such argument.

Ultimately, plaintiff's challenge rings hollow. First, contrary to plaintiff's claim that he

never received any written explanation of the decedent's benefits, the record discloses that plaintiff *was* sent the 2010 Benefits Enrollment Highlight that included the same cap on coverage as is contained within the Plan document. See prior Declaration of Leigh Braun ISO Mot. Abuse of Discretion Review, ¶ 7 (Dckt No. 39). This would have sufficiently informed the decedent and plaintiff of the relevant coverage limitations. Moreover, and more significant, even if plaintiff hadn't received any written explanation of Plan benefits, defendant is correct that ignorance of an ERISA plan's benefit terms is not grounds for a rejection of those terms. See, e.g., Gravelle v. Health Net Life Ins. Co., 2009 WL 210450, *7 (N.D. Cal. Jan. 26, 2009)("An insured has a duty to read his policy and will be bound by its provisions if he accepts it without objection").

    Second, the Plan's own terms preclude plaintiff from relying on oral modifications as a basis for superceding the terms of the Plan. The SPD states, "if there is any conflict between the information in the Plan document and any other materials, *including any verbal representation*, the Plan documents control." See MS000045 (emphasis added). Thus, regardless of the content of any representation made by a Benefits Center Representative, it is the Plan coverage provisions – which, as noted, support MetLife's coverage determination in this case – that control. See Richardson v. Pension Plan of Bethlehem Steel Corp., 112 F.3d 982, 986 n. 2 (9th Cir.1997)("[b]ecause 29 U.S.C. § 1102 provides that 'every employee benefit plan shall be established and maintained pursuant to a written instrument,' courts have held th[at] oral agreements or modifications cannot be used to contradict or supersede the written terms of an ERISA plan"); see also Greany v. Western Farm Bureau Life Insurance Co., 973 F.2d 812, 822 (9th Cir.1992) ("A plaintiff cannot avail himself of a federal ERISA estoppel claim based upon statements of a plan employee which would enlarge his rights against the plan beyond what he could recover under the unambiguous language of the plan itself.").

    Furthermore, plaintiff has rather disingenuously omitted a critical page in the record from the confirmation of benefits letter sent to him on February 3, 2010. Plaintiff has, for

9

example, included ADMIN 218-19 as proof of the February 3 confirmation of benefits, which letter does appear to confirm $1 million in supplemental life insurance coverage for the decedent. Defendant, however, has submitted a more complete copy of that same confirmation letter, which includes a third page that expressly states: "Any inconsistency between the terms of any electronic, written or verbal communication and the official Plan document will be governed by the Plan document." See MS000187, attached as Exhibit A to Declaration of Leigh Braun Decl. ISO Opposition to Augment Record, Doc. No. 56. This provides yet further proof that plaintiff's reliance on contrary oral representations made by a Benefits Center representative, is precluded.

All of which conclusively demonstrates that the Plan language and the record in this case support MetLife's determination that supplemental life insurance benefits were due in the amount of $500,000. The record also fairly supports the conclusion that plaintiff and the decedent were, in fact, placed on notice as to the coverage limitations that applied to decedent, and furthermore, that both were adequately informed that in the event any inconsistencies arose, it was the Plan document and insurance coverage – rather than oral representations – that controlled.

C.   Conclusion

For all the foregoing reasons, Morgan Stanley and MetLife's motions for summary judgment are GRANTED. Plaintiff's cross-motion for summary judgment is DENIED.

**IT IS SO ORDERED.**

Dated: April 26, 2012

PHYLLIS J. HAMILTON
United States District Judge